
152 637
181 518

## Baird v. Ford.  Baird's Appeal.

*Auditor's finding of facts—Review—Fraud.*

An auditor's affirmative finding, sustained by the court below, that an assailed judgment is not collusive and fraudulent, will not be reversed in the Supreme Court except for palpable error.

A. J. Ford held a judgment against his brother John A. Ford for $2,522. The judgment was originally entered in 1882, but not revived until 1890. In May, 1887, John A. Ford held a judgment for $1,291.17 against Tidball. Execution was issued against Tidball's property under another judgment, and John A. Ford, not being able to buy in the property, and being afraid that he would lose his judgment, applied to his brother A. J. Ford for assistance. A. J. Ford bought in the property for $3,400, paying to the sheriff $2,200, his brother receipting to the sheriff for the amount of his judgment. A. J. Ford testified that it was understood between him and his brother that A. J. Ford was to sell the property, and after paying himself, to return to his brother any surplus that might remain. The property was never sold, but A. J. Ford testified that it had been for sale ever since he bought it. When A. J. Ford's judgment against John A. Ford was revived in 1890, no credit was allowed on account of John A. Ford's judgment against the Tidball property. The auditor found that there was no collusion or fraud in the revival of the judgment, and his finding was sustained by the court below. *Held*, that this finding would not be reversed on appeal.

Argued Oct. 18, 1892. Appeal, No. 221, Oct. T., 1892, by Thomas H. Baird and Alexander & Co., judgment creditors of John A. Ford, from decree of C. P. Washington Co., Feb. T., 1886, No. 248, distributing a fund raised by sheriff's sale of realty, on execution, Thomas H. Baird v. John A. Ford. Before STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Exceptions to auditor's report distributing fund raised by sheriff's sale.

From the report of the auditor, H. J. Van Kirk, Esq., it appeared that, in 1882, A. J. Ford obtained a judgment against his brother John A. Ford, which he did not revive until 1890, when, on scire facias to revive, judgment was entered for $2,522.50. In May, 1887, John A. Ford held a judgment for $1,291.17 against Elizabeth Tidball. Execution was issued against the Tidball property, and John A. Ford, not being able to buy in the property, and being afraid that he would lose his judgment, applied to his brother, A. J. Ford, for assistance.

A. J. Ford testified as to the circumstances of this sale as follows: "A couple of weeks before the sale, my brother came up and told me the Tidball property was about to be sold. He said he had a judgment against the Tidball property and if I didn't help him he would lose it, for the Alexanders had a judgment against it and he would rather I would have it than them. I told him I didn't want the property, that I didn't know anything about the property and he had better get some one down there to come up and bid it up. He came back the day of the sale; he told me he hadn't been able to get any one to bid on it, and said he would give me his judgment and if I ever made anything out of it I could give him what I thought was right. He knew I wouldn't want to make anything off of him. It was about the time for the sale and I hadn't much time to make inquiries about it. It was knocked down to me for $3,400. My brother receipted to the sheriff for his judgment and I paid the sheriff $2,200. I still own the property. At the time or before or subsequent to the sale there was no collusion between me and my brother by which any other creditor was to be prevented from collecting their claims against my brother. The property has been for sale ever since I bought it. It is not yet sold." And on cross-examination, A. J. Ford said: "When my brother receipted the judgment I did not pay my brother a dollar."

When A. J. Ford's judgment against John A. Ford was revived in 1890, no credit was allowed on account of John A. Ford's judgment against the Tidball property. The auditor found as a fact that there was no collusion or fraud in the revival of the judgment. Appellants, subsequent judgment creditors, not paid in full, excepted to this finding of the auditor. The exception was overruled.

*Error assigned* was overruling exception, quoting it.

*A. M. Todd*, for appellant.—If a debtor assigns his property to a creditor in consideration of a debt really due, upon a secret trust that he shall receive a benefit, either by a return of part of the property or a loan of it on beneficial terms, and the transaction, taken all together, has a direct tendency to protect the property of the debtor from his other creditors, the assignment is fraudulent and void: Passmore v. Eldrige, 12

S. & R. 198; McCullough v. Hutchinson, 7 Watts, 434; Shaf-
fer v. Watkins, 7 W. & S. 219; Connelly v. Walker, 45 Pa.
449; McClurg v. Leeky, 3 Pa. 83; Hart v. McFarland, 13 Pa.
182; Bentz v. Rockey, 69 Pa. 71; Zerbe v. Miller, 16 Pa. 484.

A revival for a larger amount than is justly due is fraudu-
lent as to all existing creditors hindered and delayed thereby:
Jackson v. Somerville, 13 Pa. 359; Byrod's Ap., 31 Pa. 231.
Including in such revival a sum not owing to the plaintiff
renders the judgment void as a whole: Gates v. Johnson, 3
Pa. 52; Whiting v. Johnson, 11 S. & R. 328; McKee v. Gil-
christ, 3 Watts, 230; Barrett v. Nelson, 119 Pa. 171; Bunn,
Raiguel & Co. v. Ahl, 29 Pa. 387; Meckley's Ap., 102 Pa.
536.

No paper book contra.

OPINION BY MR. JUSTICE McCOLLUM, January 3, 1893:

The appellants request us to find from the evidence sub-
mitted to the auditor and printed in their paper book that
A. J. Ford's judgment is collusive and fraudulent. It is a
question of fact to which they direct our attention and their
complaint here is that it was erroneously decided against them
by the auditor and the court below. It is not necessary to
cite authorities in support of the familiar proposition that an
auditor's finding of facts when approved by the court to which
his report is made is entitled to the same consideration here
as the verdict of a jury and will not be reversed except for
palpable error. In this case the burden of maintaining the
charge of fraud by satisfactory and convincing evidence is on
the appellants. They are seeking to set aside a judgment
which is regular on its face and prima facie entitled to the
fund for distribution. There is no presumption that it is
fraudulent, and they cannot take any portion of the fund which
appears to belong to it until they have proven that it is. An
examination of the testimony on which they rely to support
their charge has failed to satisfy us that the auditor erred in
finding affirmatively, as he substantially did, that there was no
collusion between the parties to the judgment, or fraud prac-
ticed or intended by either of them in obtaining or reviving it.
There is no evidence showing or tending to show that there
was any agreement or understanding between the Ford brothers

at any time that John should have credit on the judgment in controversy for the amount of his judgment against the Tidball property, or that the former judgment was revived by them for more than was actually due upon it. If their testimony is credited, and there is no direct denial of it to be found in the evidence offered by the appellants, A. J. Ford became a purchaser of the Tidball property on the urgent solicitation of his brother John and in the hope of realizing enough by a sale of it to reimburse himself and pay to John the whole or at least a part of his judgment. From their account of what passed between them before and at the time of the sale he did not become by the purchase of the property unconditionally liable for the amount of John's judgment, and he was under no legal or moral obligation to pay it at the time his own was revived by their agreement. His liability if any exists in consequence of the purchase is, under their evidence, contingent on a sale of the property for more than enough to reimburse himself, and is measured by the surplus. The testimony supporting this view of the Tidball purchase and the rights and liabilities of the Ford brothers under it, could not be ignored by the auditor in passing upon the allegation that the revival of the A. J. Ford judgment was a fraud on the creditors of John. This purchase and John's voluntary satisfaction of his judgment in aid of it constitute the principal reliance of the appellants in their assault upon the judgment in controversy, and any explanation of their acts which shows their consistence with an honest revival of it for the full amount, is important and, if credited, destructive of the theory on which the charge of fraud is made.

In the fact that A. J. Ford allowed the lien of his judgment to expire in January, 1887, and did not revive it until March, 1890, there is but little significance. The lien of the judgment was lost more than three months before his purchase of the Tidball property, and when it was a valid obligation for the whole amount, and when he revived it appellant Baird's judgment was a prior lien. The loss of the lien and the delay in reviving it are quite as indicative of carelessness or of confidence in John's solvency as of a conspiracy to defraud creditors.

We have carefully examined and considered the evidence

produced by the appellants to sustain their charge of fraud, and have briefly referred to the most important features of it. Our conclusion is that it will not justify a reversal of the affirmative finding by the auditor that the assailed judgment is not collusive and fraudulent. As the decree of the court below gave to Alexander & Co. the full amount of their judgment with interest, costs and attorneys' commissions, their appeal from it was probably prompted by an apprehension that it was not sustainable on the facts found by the auditor.

The specifications are not sustained.

Appeal dismissed at the cost of the appellants.

See also the next case.